EDWARD R. HEWITT, Plaintiff, v. COOPER UNION FOR THE ADVANCE-
MENT OF SCIENCE AND ART, Defendant.

First Department, November 30, 1923.

Trusts — deed of trust establishing Cooper Union provided that oldest
lineal male descendant of grantor should be trustee of corporation —
phrase " oldest lineal male descendant " must be given ordinary mean-
ing and not meaning under law of primogeniture — oldest lineal male
descendant and not oldest lineal male descendant of oldest line is
entitled to be trustee.

In the deed of trust by which Peter Cooper established Cooper Union it is provided
that " the oldest lineal male descendant of Peter Cooper shall be a trustee
ex gratia " of the corporation created to perpetuate, the trust.   The words
quoted must be given the ordinary well-known meaning which is given to them
in this country and they should not be construed to mean that the trusteeship
shall go to the oldest lineal male descendant of the oldest line according to the
law of primogeniture.

Accordingly the plaintiff, who is the son of Peter Cooper's daughter, the younger
of his two children, and is the oldest male grandchild of Peter Cooper, is entitled
to be trustee ex gratia under the terms. of the trust, both of Peter Cooper's
children being dead, though there is living a younger male grandchild, the son
of Peter Cooper's son.

SUBMISSION of a controversy upon an agreed statement of facts
pursuant to section 546 of the Civil Practice Act.

*Ver Planck, Prince & Burlingame* [*Milton C. Lightner* of counsel],
for the plaintiff.

*Parsons, Closson & McIlvaine* [*Henry B. Closson* of counsel],
for the defendant.

MARTIN, J.:

The facts relating to this controversy may be summarized as
follows:

The Cooper Union for the Advancement of Science and Art
is a corporation created by, and existing under, the laws of the
State of New York, having been incorporated by a special act of
the Legislature passed April 13, 1859, amending two prior acts
respectively passed February 17, 1857, and March 21, 1857.   (See
Laws of 1857, chaps. 31, 149, as amd. by Laws of 1859, chap. 279.)
By the provisions of the act of April 13, 1859, as amended, Peter
Cooper, with Edward Cooper, Abram S. Hewitt, Daniel F. Tie-
man, Wilson G. Hunt and John E. Parsons, and their successors,
were created and constituted a body corporate by the name and
title of " The Cooper Union for the Advancement of Science and
Art," the corporate existence of which commenced when Peter
Cooper conveyed to it, as he did, the block of land and the edifice

thereon described in section 2 of the act by deed of trust dated April 29, 1859. The copy of this deed of trust set forth in the act of April 13, 1859, is a true copy of the original, except that the original bears date April 29, 1859, is signed by Peter Cooper and Sarah Cooper, his wife, and witnessed by Edward Cooper and Sarah A. Hewitt, and the blanks in the copy for the date of the passage of the act of April 13, 1859, were in the original deed correctly filled in before its execution.

At the time of the passage of this statute and the execution of this deed of trust, Peter Cooper had two children (who were his only children), the older a son, Edward Cooper, one of the trustees, and the younger, a daughter, Sarah Amelia Hewitt, who had married Abram S. Hewitt, designated as one of the original trustees of the corporation. Abram S. Hewitt died January 18, 1903. Edward Cooper died February 25, 1905, and upon his death was succeeded as trustee by George L. Rives, who was duly elected to fill the vacancy.

Edward Cooper left him surviving his only child, Edith Cooper Bryce, who died April 29, 1916, leaving her surviving one son, Peter Cooper Bryce, and two daughters. Peter Cooper Bryce was born November 20, 1889. He became a member of the board of trustees by virtue of election on the 13th day of December, 1917.

Sarah A. Hewitt, daughter of Peter Cooper, died August 14, 1912, leaving three sons, Peter Cooper Hewitt, Edward R. Hewitt and Erskine Hewitt, and three daughters, Sarah Cooper Hewitt, Eleanor G. Hewitt and Amy H. Green. Peter Cooper Hewitt, the oldest son, after the death of his father, the said Abram S. Hewitt, was on the 5th day of May, 1903, elected a member of the board of trustees and served until his resignation on May 11, 1921. In June, 1921, Thomas Snell was elected as a trustee in his place.

The second son of Sarah A. Hewitt is Edward R. Hewitt, the plaintiff in this action and the oldest living male descendant of Sarah A. Hewitt. He is fifty-six years of age.

The board of trustees now consists of the following five members, all chosen by election: R. Fulton Cutting, J. Pierpont Morgan, Charles W. Gould, Peter Cooper Bryce and Thomas Snell.

Edward R. Hewitt, the plaintiff herein, has never been a member of the board of trustees by election and has not been recognized by the board of trustees as entitled to the status of trustee *ex gratia*. He asserts that he is now the " oldest lineal male descendant " of Peter Cooper, within the meaning of the statutes and deed of trust, and he has heretofore demanded that the defendant herein recognize him as now the trustee *ex gratia* designated by the pro-

17

**238**   HEWITT *v.* COOPER UNION FOR ADVANCEMENT OF S. AND A.

First Department, November, 1923.   [Vol. 207

visions of the State statutes and the deed of trust, and accord to him the rights and privileges of such status, but the defendant has refused to accord him such status, having been advised that Peter Cooper Bryce is now the " oldest lineal male descendant " of Peter Cooper, within the meaning of the said statutes and deed of trust.

Plaintiff asks judgment adjudging him to be the trustee *ex gratia* of the defendant corporation designated by the provisions of the statutes and deed of trust, and that the defendant accord to him the rights and privileges of such status. The defendant asks judgment dismissing the action upon the merits.

Subdivision 2 of the deed set forth in section 2 of chapter 279 of the Laws of 1859, providing as to the personnel of the board of trustees, reads as follows:

" Second. That the management and control of the above mentioned and described premises, together with the appurtenances, and of any other property or money at any time to belong to the party of the second part, and the receipt and expenditure of the rents, issues, income and profits thereof, shall be forever committed, subject to the conditions and restrictions herein contained, and to such other conditions and restrictions as are or shall be contained in the aforesaid act of incorporation of the party hereto of the second part, or in any acts amendatory thereof, to a board of trustees, which shall consist at the first of the following persons, to wit: Peter Cooper, Edward Cooper, Abram S. Hewitt, Daniel F. Tieman, Wilson G. Hunt and John E. Parsons; that upon the death of that one of the aforesaid trustees who shall first die, the vacancy in the said board occasioned by his death, shall not be filled; but that forever after, except as herein especially provided, the said board of trustees herein above and in the said act of incorporation provided for, and to whom shall be committed the control and management of the above mentioned and described premises, with the appurtenances and other property or money, and the receipt and expenditure of the rents, issues, income and profits thereof, shall consist of five male persons; that the five survivors of the said six trustees above named shall constitute the first board of trustees, consisting of five members; that every succeeding vacancy in said board of trustees shall be filled by the surviving or remaining trustees by ballot; that to elect any person a trustee shall require the vote of at least three trustees for such person; *and that the oldest lineal male descendant of Peter Cooper shall be a trustee ex gratia, unless he be a trustee by virtue of original appointment herein made, or by election as herein provided.* If such *oldest* lineal male descendant of said Peter Cooper be a trustee by virtue of original appointment made herein, or by election as such

trustee, as herein provided, the number of trustees constituting said board of trustees shall be five; but if such oldest lineal male descendant of Peter Cooper be not a trustee by virtue of such original appointment or subsequent election, then and in such case, and until another vacancy shall occur in the said board of trustees by the death or removal of a trustee other than such *oldest* lineal male descendant of Peter Cooper, the number of such trustees shall be six."

When the matter was first before the Legislature, the act in reference thereto provided in section 4 of chapter 31 of the Laws of 1857 in part as follows: " *   *   *   In case the said Peter Cooper shall fail to provide for the selection and appointment of persons to fill the vacancies that may occur in said board, then the said board shall be composed as follows:

" Of the *oldest male descendant,* of lawful age, for the time being, of the said Peter Cooper."

The contention of the defendant is set forth in the brief in the following language: " The only reasonable construction of the phrase in question, having in view both what was indisputably its significance at common law and what were the circumstances to which it was applied in its use in this New York deed and statute, is that it was used as an apt designation of the male descendant who at the time would be entitled to take the ancestral estate under the perfectly well known rules of the law of primogeniture; to wit, the oldest male descendant of the oldest line; the estate passing to a male descendant of a younger line only in case of the failure of a male descendant of the older line."

It is argued by the defendant that the words " oldest lineal male descendant " must be given the construction they would have received in England at the time the statute was passed. It is asserted that at that time there was a well-known English decision construing similar words.

In the decision that is particularly referred to (*Thellusson* v. *Rendlesham,* 7 H. L. Cas. 429) Lord St. LEONARDS said: " If we were in a different country, the result might be different. There are countries, no doubt, in which a man would come to a contrary conclusion. We all know countries in which, at the moment of division of the property, they would collect all the heirs of the ancestor into a room, and call for baptismal certificates, and call out for the eldest male, without reference to the particular branch or line which he represented, preferring the oldest man in age to the younger man of the elder branch. Well, that may do very well in Egypt, but it will not do in England. We are here to construe *an English will of real property in England,* according to

**260**   HEWITT *v*. COOPER UNION FOR ADVANCEMENT OF S. AND A.

First Department, November, 1923.                    [Vol. 207

English settlements, and according to the mode of disposition by wills with reference to English property."

It is very evident that at the time these words were used they had a different meaning in America, where the rule of primogeniture, which the defendant has asked this court to follow in this case, was repugnant to the American sense of equality and justice.

What the American people thought of that rule may be gleaned from a statement by Thomas Jefferson in his autobiography. He said: "The abolition of primogeniture, and equal partition of inheritances, removed the feudal and unnatural distinctions which made one member of every family rich and all the rest poor, substituting equal partition, the best of all agrarian laws." (Jefferson's Autobiography, 40.)

In looking at the biography of Peter Cooper, it will be found that his life and training were so truly American that he could hardly have been supposed to have sought to insert words in the statute creating Cooper Union which should be given the meaning which would then prevail in England alone. We are loath to believe that he could have intended that these words should be given any other meaning than that generally given by the American people. He was a self-made man, had risen from an obscure position in life to a position of wealth and greatness. His life was the embodiment of everything truly American; his work was an example to American youth, and the monument which he left in the form of an educational institution, no doubt he planned to have administered in accordance with American ideals. The charter of the institution abounds with evidence of that fact.

We have come to the conclusion, therefore, that the words "oldest lineal male descendant" should be given the ordinary well-known meaning which is given to them in this country and which they had in this country at the time they were used by Peter Cooper; that he did not intend that they should receive the strained and forced meaning which they received in the English law, and which was adopted in the *Thellusson* case by judges who admitted that outside of England they would probably be given a different meaning.

In that case a will of real property, in England, was being construed in the light of statutory law, and in harmony with the law relating to English settlements and wills disposing of such realty. The word "lineal" was construed to imply the idea of primogeniture. In this State it has been held that the natural implication from the use of the term lineal descendants is that collaterals are excluded.

An examination of the act establishing the institute, together

with the circumstances surrounding the life of Peter Cooper lead to the conclusion that he intended to designate the oldest male among his lineal descendants.

He had but two children, his son and his daughter. In the first statute the right of trusteeship was given to the oldest male descendant, a phrase which unquestionably pointed first to his son and then to the oldest male descendant of either his son or daughter. Had he wished to confine this right to the descendants of his son, he would have no doubt stated so in clear, simple and explicit language. The fact that his son's only child was a daughter almost of itself precludes an inference that he intended to restrict trusteeship to a direct line of descendants from son to son. The language which he used cannot be reasonably given such interpretation. He used a broad phrase including all his male lineal descendants and stated that the oldest of them should be a member of the board.

This conception of designating as a trustee the oldest lineal male descendant of Peter Cooper must have been his. His language should be given the meaning natural to a self-made man in America in the nineteenth century, and not that which it would have had in England under the rule of primogeniture.

He evidently wished to provide, by designating the oldest lineal male descendant, for the selection of a man of experience and mature years in preference to a man with less experience and probably of a younger generation.

We conclude that the plaintiff is entitled to judgment.

Judgment should be ordered for plaintiff, without costs.

CLARKE, P. J., DOWLING, FINCH and McAVOY, JJ., concur.

Judgment ordered for plaintiff, without costs. Settle order on notice.